REVISED November 28, 2007

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 07-50537
Summary Calendar
_____

**United States Court of Appeals
Fifth Circuit**

**F I L E D**

November 6, 2007

Charles R. Fulbruge III
Clerk

SHELTON CHARLES,

Plaintiff-Appellee

v.

GARY GRIEF, in his individual and
official capacity,

Defendant-Appellant

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before WIENER, BENAVIDES, and PRADO, Circuit Judges.

WIENER, Circuit Judge.

Defendant-Appellant Gary Grief, an upper-level official of the Texas Lottery Commission ("the Commission"), appeals the district court's denial of his motion for summary judgment seeking dismissal on grounds of qualified immunity from the 42 U.S.C. § 1983 racial discrimination and employment retaliation suit filed by Plaintiff-Appellee Shelton Charles whose job as a systems analyst with the Commission was terminated by Grief. Concluding that we lack appellate jurisdiction to hear Grief's appeal of the district court's

interlocutory ruling because it is grounded in genuine issues of fact, we dismiss Grief's appeal.

## I. FACTS & PROCEEDINGS

Charles sent e-mails to members of the legislative committee that had oversight of the Commission, alleging, inter alia, violations of the Texas Open Records Act, misuse of state funds, and misconduct by Commission management. Charles sent a copy of his last such e-mail to Commission officials. Two days later, Grief directed Charles to meet with his immediate supervisor and a human resources manager to answer questions regarding the e-mail. When those two began to question Charles about the e-mails, he requested that the Commission's questions be put in writing so that he could respond in writing. According to Charles, a representative of the Commission agreed to do so. That same day, however, Grief appeared unannounced in Charles's office and fired him on the spot, handing Charles a written statement to the effect that he was being fired for insubordination, specifically for his "refusal to respond to the direct request from [his] immediate supervisor."

After Charles sued Grief and the Commission for inter alia employment retaliation in violation of Charles's constitutional right of free speech, Grief sought dismissal as a defendant on grounds of qualified immunity, which the district court denied, largely on the basis of a magistrate judge's Report and

2

Recommendation. Like the magistrate judge, the district court held that the summary judgment record, when viewed in the light most favorable to the plaintiff as the non-movant, established genuine issues of fact. These included (1) whether Charles was fired for insubordination or for sending the e-mails to members of the state legislature, and (2) whether he was speaking as a citizen on matters of public concern and interest of the State and was thus entitled to protection of the First Amendment (as asserted by Charles) or merely making the statements as a public employee, possibly even pursuant to his official duties as contended by Grief.[1]

## II. APPELLATE JURISDICTION

Subject to a few narrow exceptions, federal appellate courts do not have jurisdiction to hear appeals of interlocutory rulings of the trial courts.[2] One such exception grants us jurisdiction to entertain an appeal from the interlocutory denial of a state actor's motion to be dismissed, on grounds of qualified immunity, as a defendant in a § 1983 lawsuit asserting the violation of a constitutional right.[3] It is well settled, however, that not every

---

[1] See Garcetti v. Ceballos, 126 S.Ct. 1951, 1960 (2006), holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."

[2] Kinney v. Weaver, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (citing 28 U.S.C. § 1291 and Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)).

[3] Connelly v. Tex. Dep't of Criminal Justice, 484 F.3d 343, 346 (5th Cir. 2007).

interlocutory denial of such a defendant's claim of qualified immunity is immediately appealable: Only those denials that turn on legal issues, such as the materiality of a disputed fact — and not those that turn on factual issues, such as the trial court's finding of the presence of a genuinely disputed issue of fact — are immediately appealable.[4] Thus, when a defendant has sought summary dismissal on grounds of qualified immunity, and the district court has denied that motion based on a determination that the summary judgment evidence, taken in the light most favorable to the plaintiff as non-movant, is sufficient to establish the existence of a material fact dispute, we have no appellate jurisdiction to review the interlocutory order denying qualified immunity.[5] More precisely, our appellate jurisdiction is proscribed as to those interlocutory denials of qualified immunity in which the trial court has determined that the factual dispute is "genuine"; only when denial of qualified immunity turns on whether a genuinely disputed fact is "material" are we authorized to review the order immediately.[6]

We frequently encounter this dichotomy which contrasts those interlocutory orders denying qualified immunity that are appealable (the ones that turn on issues of law, such as the materiality of a genuine fact issue) and

---

[4] Kinney, 367 F.3d at 346.

[5] Id. at 346-47.

[6] Id. at 347.

4

those that are not appealable (the ones that turn on issues of fact, such as the genuineness of a dispute) when — as in the instant case — a public employee asserts a claim of an adverse employment action at the hands of one or more state actors as the result of speech that the employee insists was uttered on an issue of public concern, not merely internal job-related grievances, and is thus protected by the First Amendment. Moreover, cases of this genre frequently involve the two material fact questions at issue today: Was the speech in question a substantial or motivating factor in the decision to terminate the employee; and, if so, did the speech address matters of public concern entitling the speaker to First Amendment protection?[7]

The law regarding the question whether an employee has spoken on a matter of public concern or only on issues of employment personal to him was tweaked last year by the Supreme Court in its holding in Garcetti to the effect that employee speech made pursuant to official duties cannot be speech made as a citizen for First Amendment purposes. Garcetti did not, however, change the body of jurisprudence that determines appellate jurisdiction for immediate review of denial of qualified immunity: None can dispute that the

---

[7] Only when the employment action is shown to have been taken because of the speech and the speech is shown to have been made by the employee speaking as a citizen on a matter of public concern, does the case progress to the well-known test established in Pickering v. Bd. of Educ., 391 U.S. 563 (1968) and Connick v. Myers, 461 U.S. 138 (1983), balancing (1) the interests of the public in the speech uttered against (2) the interests of the employer in maintaining order, discipline, esprit de corps, and the like.

materiality of such questions as (1) whether the adverse employment action was taken because of the employee's speech; (2) whether the speech of a public employee for which he receives an adverse employment action addresses a matter of public concern is material; and (3) post-Garcetti, whether the speech at issue was made by the employee pursuant to an official duty, are quintessential questions of fact. Therefore, when, as here, there is an undeniably genuine dispute between the affected employee and the state actor as to whether the employment action at issue was taken because of the speech (here, the e-mails) or some other, legitimate disciplinary reason (here, insubordination), the denial of qualified immunity indisputably hinges on a fact that is genuinely disputed. At that instant, school is out: The denial of qualified immunity is just not appealable. In Kinney v. Weaver,[8] this court sitting en banc, quoted our earlier statement in Wagner v. Bay City that put it succinctly: "we can review the materiality of any factual disputes, but not their genuineness."[9]

Here, the district court examined the summary judgment evidence and very clearly and expressly held that the admittedly material fact questions —— whether Charles was fired for sending the e-mails and, if so, whether their content addressed matters of public concern —— are genuinely

[8] 367 F.3d at 347.

[9] 227 F.3d 316, 320 (5th Cir. 2000).

6

disputed. Again, this ubiquitous trump card, which pretermits any appellate jurisdiction to consider an interlocutory order denying qualified immunity for factual reasons, is obviously unaffected by the legal spin that Garcetti added to the question what constitutes public speech. Given the clear, unequivocal, and emphatic pronouncement of the district court that it was denying qualified immunity because Charles had borne his burden of demonstrating the presence of issues of fact, of which none can contest the genuineness, our lack of appellate jurisdiction is pellucid —— and should have been to counsel for Grief. Every argument in counsel's brief to the court might be correct and might ultimately prevail: They simply cannot be heard at this juncture.

## III. Ad Hominem

The cost in time and money incurred by a public employee who has sued in the belief that he has suffered an adverse employment action as the result of unconstitutional retaliation is significantly increased when, as here, the defendant takes a clearly unwarranted appeal of an interlocutory denial of qualified immunity. Taking such an appeal is now unconscionable in light of this court's burgeoning precedent uniformly rejecting such appeals of fact-based denials of qualified immunity for lack of appellate jurisdiction, our most recent being Connelly.[10] Considering the usual disparity in the financial

---

[10] 484 F.3d 343 (5th Cir. 2007). The opinion in Connelly was filed on April 10, 2007, more than three months before Grief's counsel filed his appellate brief, which does not cite Connelly. It was cited, however, in appellant's reply brief, although not for its relevant

7

conditions of the parties to such actions, cavalierly taking such an appeal smacks of economic duress. Indeed, this is at least the second such case this year in which the office of the Attorney General of Texas has improvidently brought and doggedly prosecuted such an appeal, Connelly being another. We trust that counsel for Grief, as well as all other counsel who represent public employers and state actors in such roles, will henceforth carefully heed the case law of this court on point and be chary to take appeals of interlocutory orders denying qualified immunity on grounds of the existence of genuine factual disputes, lest they incur penalties, sanctions, damages for, e.g., frivolous appeals, or worse.

## IV. CONCLUSION

For lack of appellate jurisdiction, this appeal is DISMISSED with all costs assessed to appellant.

---

import in this case. Had counsel for Grief read Connelly, Kinney v. Weaver et al, more objectively, counsel might have done what an officer of the court should have done, viz., dismissed this appeal (which never should have been taken in the first place) for lack of appellate jurisdiction.