**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 27, 2011

Lyle W. Cayce
Clerk

No. 10-50680

ARTHUR ELIZONDO,

Plaintiff-Appellant,

v.

FLETCHER PARKS, Individually and in His Official Capacity,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:04-cv-01025

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Arthur Elizondo appeals the district court's summary judgment for Defendant-Appellee Fletcher Parks on Elizondo's 42 U.S.C. § 1983 claim based on Parks's alleged violation of Elizondo's First Amendment free speech rights. On a prior interlocutory appeal, this court vacated the district court's original order denying summary judgment for Parks and remanded for consideration of whether Elizondo's alleged speech was made pursuant to his job duties in light of the Supreme Court's decision in *Garcetti v. Ceballos*, 547

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

U.S. 410 (2006).  After receiving supplemental briefing from the parties, the district court found that Elizondo's statements were made pursuant to his job duties and, therefore, were not protected by the First Amendment.  Because Elizondo failed to show a violation of a constitutional right, the district court granted summary judgment for Parks based on qualified immunity.

At issue is whether Elizondo's statements to his employer, Parks, were made pursuant to his official duties and are therefore not protected by the First Amendment under *Garcetti*.  *Id*.  We hold that Elizondo's statements are not protected and AFFIRM.

I

In 1987, Elizondo started working as a Business Development Specialist for the Minority Business Development Center (the Center) at the University of Texas at San Antonio (UTSA).  In that position, Elizondo assisted prospective minority entrepreneurs in starting businesses.  Elizondo's position was funded by the Minority Business Development Agency, a subdivision of the United States Department of Commerce.  Parks was Elizondo's immediate supervisor at the Center.

In the fall of 2002, the Center experienced a budget shortfall.  Rather than fire two employees, a plan was devised to temporarily transfer Elizondo and Luke Ortega to the UTSA Small Business Development Center (SBDC), run by Judy Ingalls.  The SBDC was funded by a different federal grant, and this grant would pay Elizondo's and Ortega's salaries until the end of the year.  Elizondo and Ortega would continue serving the Center's clients without charging a fee, and would also assist the SBDC.  Ingalls sought and received approval for the plan from the Small Business Administration, which provided part of the funding for the SBDC.

In mid-October 2002, Parks met with Elizondo and Ortega about the proposed temporary reassignments.  Ortega accepted the reassignment, but Elizondo refused.  Elizondo contends that when he heard of the plan, he

immediately objected. Elizondo allegedly told Parks that the SBDC would essentially be paying Elizondo's salary while Elizondo continued to perform work for the Center, and such commingling of funds from two separate federal grants would be illegal and fraudulent.[1]

Parks denies that Elizondo said that the reassignment was fraudulent. Rather, according to Parks, Elizondo only objected to a change in work assignment because of concerns about reporting to both Ingalls and Parks and the potential increased workload. Ortega testified at his deposition that he did not remember Elizondo saying that he thought the reassignment was illegal. Ingalls also stated in her affidavit that Elizondo never told her that he thought the transfer was fraudulent.[2]

On October 31, 2002, Parks sent a memorandum to Elizondo requesting a decision whether Elizondo would accept the new assignment by November 1. Elizondo responded in writing that he needed "more time to review this matter with legal before I can respond. . . . I know that you would request the same, especially since this memo indicates that my job position is in jeopardy and other references made in this memo bring up several questions that need full responses and complete answers, so that my 15 years and 2 months, plus my retirement are not in jeopardy." On November 11, Parks spoke with Elizondo again and when Elizondo still refused the reassignment, Parks handed Elizondo a termination letter. The letter stated that the reasons for Elizondo's

---

[1] Elizondo also claims that he reported the fraud to Raquel Suniga, an employee of the Dallas regional office of the MBDA, and that he called a Department of Commerce hotline and several attorneys to discuss the situation. However, on appeal, Elizondo only briefed the district court's conclusion as to his internal communications with Parks. Thus, Elizondo has waived any argument that his other alleged communications were protected speech activities. *See Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 255 (5th Cir. 2008).

[2]Robert Guerrero also testified via deposition that Elizondo simply did not want to accept the position and that Elizondo did not believe that the new job was what he wanted.

termination were "failure to cooperate with [his] supervisor, refusal to follow instructions and [Elizondo's] refusal to perform [his] assigned duties."

Elizondo filed suit against UTSA and Parks alleging a 42 U.S.C. § 1983 First Amendment retaliation claim, as well as claims for violation of the False Claims Act, 31 U.S.C. § 3730(h), and the Texas Whistleblower Act, Tex. Gov't Code Ann. § 554.001 et seq. (Vernon 1988). UTSA asserted sovereign immunity, as did Parks on all claims against him in his official capacity. The district court dismissed all of Elizondo's claims against UTSA and against Parks other than the First Amendment retaliation claim. Both Parks and Elizondo then moved for summary judgment, and Parks asserted qualified immunity. After the district court denied Parks's motion, Parks filed an interlocutory appeal with this court. Although noting that the district court applied the correct legal framework for assessing a First Amendment retaliation claim at the time of its ruling, this court vacated the district court's order and remanded the case in light of the Supreme Court's holding in *Garcetti*, 547 U.S. 410.

On remand and after receiving supplemental briefing on *Garcetti*, the district court granted summary judgment to Parks, finding that Elizondo's comments to Parks were made pursuant to his official duties and were therefore unprotected by the First Amendment. In reaching its conclusion, the district court noted that Parks called the meeting during which Elizondo allegedly made the comments about fraud and that the subject matter of the speech concerned Elizondo's continued employment—his pay, duties, and to whom he would report. The district court found that official duties of any job included meeting with a supervisor to discuss a new assignment and continued employment. Even though reporting fraud was a matter of public concern, the communications all related to Elizondo's job. Thus, because Elizondo could not establish violation of a constitutional right, the district court granted Parks's

motion for summary judgment based on qualified immunity. Elizondo timely appealed to this court.

## II.

This court reviews a district court's summary judgment *de novo*, including judgments based on qualified immunity, applying the same standard as the district court. *See Gen. Universal Sys. v. HAL Inc.*, 500 F.3d 444,448 (5th Cir. 2007). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court draws all reasonable inferences in the light most favorable to the nonmovant. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283,285 (5th Cir. 2006). However, the nonmoving party may not rest on mere allegations, but must set forth specific facts indicating a genuine issue for trial. *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 505 (5th Cir. 1999).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (internal citation omitted). Courts have discretion to decide which of the two prongs of qualified immunity to tackle first. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Therefore, qualified immunity protects government officials performing discretionary functions from individual liability for civil damages but only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001). We find that *Garcetti* precludes Elizondo's claim and therefore Parks is entitled to qualified immunity because there was no violation of a statutory or constitutional right.

No. 10-50680

### III.

To establish a First Amendment retaliation claim, the plaintiff must prove four elements: (1) that he suffered an adverse employment action; (2) that he spoke as a citizen on a matter of public concern; (3) that the plaintiff's interest in the speech outweighed the government's interest in the efficient provision of public services; and (4) that the speech precipitated the adverse employment action. *Modica v. Taylor*, 465 F.3d 174, 179-80 (5th Cir. 2006). "Whether [the plaintiff] engaged in protected speech is a purely legal question . . . ." *Charles v. Grief*, 522 F.3d 508, 512 (5th Cir. 2008).

The Supreme Court's decision in *Garcetti* added a threshold layer to the analysis of whether a public employee spoke as a citizen on a matter of public concern—namely a determination of whether the plaintiff spoke pursuant to his or her official duties. 547 U.S. at 421. The *Garcetti* Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* The rationale behind the rule was that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 421-22. Thus, "before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job." *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (quoting *Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006)). The court's focus is not on the speech's content, but rather "the role the speaker occupied when he said it." *Id.*

Several non-dispositive factors aid in an analysis of the speaker's role, including the internal versus external nature of the speech and whether the

subject matter concerned the speaker's employment. *Garcetti*, 547 U.S. at 420-21. Formal job descriptions, although relevant, are not dispositive, as they "often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Id.* at 424-25. Rather, the inquiry is a "practical one," and the controlling factor is whether the plaintiff's expressions were made pursuant to one of the numerous duties for which the plaintiff was employed. *See id.* at 421, 424.

This court has already interpreted the "pursuant to" language in *Garcetti*. In *Williams v. Dallas Independent School District*, this court held that "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties." 480 F.3d 689, 693 (5th Cir. 2007) (per curiam). *Williams* concerned an athletic director's memoranda to school officials in which he requested account information concerning the fulfillment of the director's daily job duties, namely budgeting for athletic department expenses. *Id.* at 694. The court found the director's speech unprotected because, although the director's duties did not specifically require him to write the memoranda, he performed this activity in the course of carrying out his official duties. *Id.*; *see also Davis*, 518 F.3d at 315 (holding that audit manager's letter discussing concerns about the inadequate response of her employer to her internal investigation was not protected speech under *Garcetti*); *Nixon v. City of Houston*, 511 F.3d 494, 498-99 (5th Cir. 2007) (holding that a police officer's comments at a crime scene to the media were made during the "course of performing his job" and were not protected). Thus, since *Garcetti*, this court has repeatedly held that statements made in the course of performing one's job are not protected.

No. 10-50680

Here, all of the speech at issue occurred in response to Parks's letters or during meetings that Parks initiated to discuss the budget shortfall and Elizondo's temporary reassignment. Elizondo's comments related to his job and how the reassignment would impact his workload, salary, and reporting duties. Further, Elizondo made all of his comments internally, directly to a supervisor, during work hours, and the subject matter of the speech concerned the manner of his continued employment. While those facts are not dispositive, they weigh in favor of finding that Elizondo was speaking pursuant to his job duties. *See Garcetti*, 547 U.S. at 420-21; *see also Grief*, 522 F.3d at 514 (emphasizing that the plaintiff voiced his concerns externally, a significant distinction from the speech at issue in *Garcetti*.). Elizondo's statements that he needed time to consider whether he could accept Parks's reassignment and consult with legal because there may be some fraud or illegal conduct at issue were directly related to Elizondo's concerns about his job. Simply put, his statements were about whether he would continue his employment. Statements about whether one will do one's job are necessarily made pursuant to one's job duties. Therefore, we hold that the district court correctly determined that Elizondo's statements at issue here are not protected by the First Amendment under *Garcetti*.

AFFIRMED.