# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 31, 2013

No. 12-11171
Summary Calendar

Lyle W. Cayce
Clerk

MATTHEW PETRIE,

Plaintiff-Appellee

v.

EDWARD SALAME, in his individual capacity,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-715

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Edward Salame brings this interlocutory appeal challenging the district court's denial of his motion for summary judgment based on qualified immunity. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Matthew Petrie began working as a patrol officer for the City of Grapevine Police Department in 1988.  In 1996, he was placed by the Department as the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11171

full-time School Resource Officer ("SRO") at Grapevine Middle School. During his sixth year on the force, Petrie began teaching the Drug Abuse Resistance Education ("DARE") program at Grapevine Middle School and continued to do so after being installed as the full-time SRO at the school. In 2002, Petrie began serving as treasurer of the Texas DARE Officers Association, an independent non-profit organization that provides support for DARE programs.

Toward the end of the 2008-09 school year, Petrie learned the Grapevine-Colleyville Independent School District, of which Grapevine Middle School was a part, was considering eliminating its DARE program. Petrie met with Tommy Ingram, then-Chief of Police for the City of Colleyville, in his office to discuss retaining and improving the DARE program. Later, Petrie met with the defendant, Edward Salame, Grapevine's Chief of Police, to discuss the decision to discontinue the DARE program. Salame asked Petrie whether he had met with anyone else to discuss the DARE program. Petrie admitted to meeting with Ingram. Salame informed Petrie that in doing so he had gone outside of the chain of command. Within a few months of his meeting with Salame, Petrie learned he had been transferred from SRO to uniform patrol duties.

On April 7, 2011, Petrie filed suit against Salame and the City of Grapevine, asserting claims under 28 U.S.C. § 1983. Petrie alleged that the defendants transferred him in retaliation for exercising his right of free speech protected by the First Amendment. The City of Grapevine and Salame filed a Rule 12(b)(6) motion to dismiss, or in the alternative, a Rule 56 motion for summary judgment. Salame also asserted a qualified immunity defense.

The district court granted summary judgment to the City, concluding that none of the bases on which a city could be liable under Section 1983 applied.

No. 12-11171

That decision is not before us on this interlocutory appeal. The court denied summary judgment for Salame on the merits and on his assertion of qualified immunity. The court held that Petrie had submitted evidence to create a fact issue on the violation of a clearly established constitutional right, and qualified immunity was therefore denied. Salame appeals.

## DISCUSSION

There is generally no right to appeal from the denial of summary judgment, but the denial of a summary judgment motion that asserts qualified immunity may be reviewed immediately as a collateral order. *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). We only examine issues of law. *Id.* We may review "the purely legal question whether a given course of conduct would be objectively unreasonable in light of clearly established law." *Id.* at 347. In assessing whether a course of conduct is objectively unreasonable, we may consider only "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id.* at 348. Our review is *de novo. Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

Whether a public official is entitled to qualified immunity under Section 1983 requires a two-step analysis. We examine "(1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

Salame contends Petrie's statements were not protected under the First Amendment. Even if they were, Salame argues that his conduct was not

3

No. 12-11171

objectively unreasonable in light of clearly established law. We address each contention.

## I. *Whether Petrie's speech is protected under the First Amendment*

Whether Petrie's speech is protected under the First Amendment is a question of law. We have jurisdiction to address that issue. *Davis v. McKinney*, 518 F.3d 304, 310 (5th Cir. 2008). To establish a Section 1983 First Amendment retaliation claim, Petrie must prove: "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (quotation marks omitted). "Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005).

Salame contends Petrie's statements were made pursuant to his official duties on a matter of private concern, and thus not protected under the First Amendment. To determine whether a public employee spoke as a citizen on a matter of public concern we focus on the role the speaker occupied when speaking and whether the speech was part of, or closely related to, his job duties. *Davis*, 518 F.3d at 312. The district court found that Petrie spoke off-duty and out of uniform to someone outside of his chain of command on a matter of school curriculum, *i.e.,* retaining the DARE program. The court concluded the evidence did not support a determination that Petrie's speech was related to his SRO job duties, and the content of his speech indicated that he spoke primarily as a

No. 12-11171

citizen.  We agree with the district court and reject Salame's contention that Petrie was acting pursuant to his official duties or speaking on a matter of private concern as a matter of law.

Even if an employee speaks on a matter of public concern, his speech is not protected unless his interest in expressing himself outweighs the government's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968).  The district court concluded that nothing in the evidence suggested that Petrie's speech had any potential or actual disruptive impact on the Grapevine Police Department's operations.  We agree that, on balance, Petrie's interest in speaking in favor of the DARE program outweighed the City's interest in efficiency.

Finally, Salame argues that Petrie did not suffer an adverse employment action.  A transfer may be considered a demotion "if the new position proves objectively worse – such as being less prestigious or less interesting or providing less room for advancement." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).  The evidence showed that a patrol officer was typically an entry-level position with a lower level of prestige than the SRO position.  Further, Petrie's schedule as a patrol officer required work on Saturdays and holidays as well as requiring more dangerous and physically taxing duties.  The district court concluded that, at the very least, a fact question exists as to whether transfer to a patrol officer was objectively worse than Petrie's position as an SRO officer.  Relying on the facts found by the district court, we reject Salame's argument that Petrie's transfer to patrol duty was not an adverse employment action as a matter of law.

No. 12-11171

To the extent Salame raises the issue of whether Petrie's transfer was factually related to his speech, we lack jurisdiction over such fact issues. *See Charles*, 522 F.3d at 516. Our jurisdiction is limited to the extent the denial of qualified immunity turns on issues of law. *Kinney*, 367 F.3d at 346. Further, the district court concluded that Salame failed to provide adequate briefing on the issue of causation and therefore had not disproved it as a matter of law. Because inadequate briefing prevented consideration of this issue by the district court, we also should not review it on appeal. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008).

The district court found that the summary judgment evidence at least created disputes of material fact in support of Petrie's claim of a constitutional violation. Based on those findings, Salame has failed to prove that Petrie's speech was not entitled to First Amendment protection.

## II. *Whether Salame's conduct was objectively reasonable in light of clearly established law.*

The second step in the qualified immunity analysis is to decide whether the challenged conduct was objectively reasonable in light of clearly established law at the time of the incident. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

At the time of the alleged violation here, "both Supreme Court and Fifth Circuit law clearly proscribed retaliation by a government employer against an employee for engaging in protected speech." *Davis,* 518 F.3d at 317. More

specific to the conduct at issue in this case, the law was clearly established that speech directed to a person outside of the workplace on a matter of public concern only tangentially related to official duties is speech protected by the First Amendment. *Id.* at 313. The district court was correct that any reasonable official would have concluded that Petrie's off-duty advocacy for the DARE program to a source outside of his chain of command fell outside the ambit of personal employment matters.

Also unconvincing is Salame's argument that the law was not clearly established with respect to whether Petrie suffered an adverse employment action. At the time of Petrie's transfer, it was well-established that a transfer could be an adverse employment action if it was objectively worse, even if not resulting in a decrease in pay, title, or grade. *See Sharp*, 164 F.3d at 933. We stated in *Sharp* that "objectively worse" could mean "less prestigious or less interesting or providing less room for advancement." *Id.* Any reasonable official in Salame's position would have known that transfer from an SRO position to uniform patrol could be considered unlawful even without affecting rank, pay, status, or grade.

AFFIRMED.