# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10951
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 4, 2015

Lyle W. Cayce
Clerk

FRANK BENES,

  Plaintiff - Appellant

v.

JO M. PUCKETT, In her individual capacity,

  Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:13-CV-663

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Frank Benes, a long-time City of Dallas employee, was terminated from the Dallas Water Utilities in early 2012. Throughout his career, Benes filed numerous complaints to his superiors and to high-ranking city officials about pay inequity based on his age and national origin. Benes also made numerous allegations that certain Dallas Water Utilities projects were plagued by fraud

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10951

and waste. Although an outside firm found that these allegations were unsubstantiated, Benes continued to send complaints. In early January 2012, Benes emailed the members of the Dallas City Council, again alleging misuse of public funds, fraud, and other unethical activities related to the White Rock Spillway project. The following day, Jo Puckett, the Director of the Dallas Water Utilities, sent Benes a disciplinary notice for violating various personnel rules, which explained that Benes could be terminated. After a hearing, Benes was terminated.

Benes brought this suit against Puckett and the City of Dallas alleging federal civil rights claims based on First Amendment retaliation and state law discrimination claims. The district court granted summary judgment, dismissing both claims. The only ruling that Benes challenges on appeal is the grant of summary judgment in favor of Puckett on the federal claim, in which the court found that she was entitled to qualified immunity.

## I.

Frank Benes was hired in 1987 as a Water Technician with the Dallas Water Utilities. After receiving his professional engineer certification in 1995, Benes was promoted to the position of Senior Engineer.

Beginning in the late 1990s, Benes's career with the City was marked by frequent complaints and grievances. In 1999, Benes brought a lawsuit against the city claiming national origin and age discrimination, as well as retaliation, which was dismissed at summary judgment. *See Benes v. City of Dallas*, 54 F. App'x 405 (5th Cir. 2002). After that, Benes repeatedly filed complaints with his superiors requesting equity pay adjustments. When those were unsuccessful, he utilized the City's grievance process and contacted its Human Resources Director to request a formal hearing regarding "unfair employment practices, retaliation, and discriminatory employment practices." ROA 555. Eventually, he began contacting Dallas city officials, including the Mayor and

members of the City Council, to request that the City Auditor investigate "possible fraud and serious violations." ROA 549.

In response, Jo Puckett, the Director of Dallas Water Utilities and a frequent recipient of Benes's complaints, notified Benes in August 2011 that an outside firm was investigating his allegations of fraud and waste and that an outside law firm was investigating his employment grievances. She also instructed Benes to stop filing grievances related to the Dallas Water Utilities projects that was being investigated. The investigation report was issued in December 2011 and concluded that "none of the allegations of inappropriate project practices, fraud or waste that were made by the individual who made them are credible, true, or correct." ROA 1253 (emphasis in original).

The situation came to a head on January 10 and 11, 2012, when Benes sent identical emails to all of the members of the Dallas City Council requesting "assistance in investigating numerous occurrences of unauthorized contract modifications, rule violations, misuse of public funds, potential fraud, and other unethical activities at the Dallas Water Utilities." ROA 1357. Benes specifically alleged that dams that were supposed to have been built as part of the White Rock Spillway project and to which $2 million had been allocated—the subject of the earlier complaints found to be baseless by the outside firm—were never built.

On January 12, Puckett sent Benes a letter notifying him of possible disciplinary action. The letter stated that Benes's repeated complaints caused "unnecessary disruption of the workplace," that his use of his work computer for personal business violated the Personnel Rules, and that Benes's recent contact with the Dallas City Council violated Puckett's instruction against filing grievances based on allegations of waste and fraud at Dallas Water Utilities that had already been investigated. *See* ROA 1714. The notice explained that Benes could be subject to termination, and a hearing was held

the following week. After finding that "[n]othing [Benes] presented at the hearing rebuts the evidence or mitigates the propriety of the discipline," ROA 1721, Puckett terminated Benes for disruptive conduct arising from lodging complaints about matters shown to be untrue, threatening conduct toward a member of the Public Information Office, and use of City resources and equipment to prepare personal grievances and complaints. Benes sought administrative review of his termination but his appeal was terminated after he failed to appear at the hearing.

Benes filed suit under 42 U.S.C. § 1983 against Puckett and the City of Dallas,[1] claiming they violated his First Amendment rights by terminating him in retaliation for communicating with the City Council.[2] Benes later conceded that the City of Dallas was not liable on the section 1983 claim and therefore sought only to recover from Puckett in her individual capacity. Puckett sought summary judgment. Concluding that Puckett acted in an objectively reasonable manner when she determined that Benes's communications were not protected speech, the district court found Puckett was entitled to qualified immunity. Benes timely appeals.

## II.

"The doctrine of qualified immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna v. Mullenix,*

---

[1] Benes originally sued only the City of Dallas but later was granted leave to add Puckett as a defendant in her individual and official capacities.

[2] Benes also sued the City of Dallas for age and national origin discrimination under the Texas Commission on Human Rights Act, but he does not appeal the district court's finding that those claims were time-barred and that "his behavior in voicing his discrimination complaints was sufficiently disruptive to render [them] unprotected." ROA 2127.

773 F.3d 712, 718 (5th Cir. 2014) (en banc) (quoting *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982)). We review a motion for summary judgment based on qualified immunity following the familiar two-part immunity analysis, taken in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (reconsidering the mandatory two-step procedure in *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). The first issue is whether a constitutional right would have been violated based on the evidence, drawing all inferences in favor of the plaintiff, *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); the second is whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted).

A right is clearly established when "[t]he contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To determine whether a right is clearly established, courts must not define the law at a "high level of generality." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011). An issue does "not require a case directly on point" to be clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083 (citations omitted). In the absence of controlling authority, an issue should only be considered clearly established if it is supported by a "robust 'consensus of cases of persuasive authority.'" *Id.* at 2084 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

### III.

As a general matter, the right of public employees to be free from retaliation when exercising First Amendment speech rights is well established. *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 574 (1968). But that right is subject to a number of qualifications. Perhaps most well-known is the principle that the public employer's interest in "promoting the efficiency of the public services it performs through its employees" may outweigh the speech interest. *Williams v. Dallas Ind. Sch. Dist.*, 480 F.3d 689, 691–92 (5th Cir. 2007); *Pickering*, 391 U.S. at 568 ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."). But even before getting to that balancing test, the plaintiff must establish that his speech was on a matter of public concern. *See Williams*, 480 F.3d at 692. And the Supreme Court has recently emphasized that speech made pursuant to a worker's "official duties" is not protected. *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006)); *see also Davis*, 518 F.3d at 312 ("[I]t is clear that *Garcetti* added a threshold layer to our previous analysis. Under *Garcetti*, we must shift our focus from the content of the speech to the role the speaker occupied when he said it." (internal citation omitted)). This *Garcetti* requirement was the basis for the district court's finding that Puckett was entitled to qualified immunity.

We thus focus our inquiry on whether it was objectively reasonable for Puckett to conclude that Benes's emails to the Dallas City Council relating to the White Rock Spillway project[3] were made in his capacity as a public

---

[3] The district court noted that although Benes filed numerous other complaints and grievances, the emails to the City Council were the subject of his free speech retaliation claim.

No. 14-10951

employee. As the district court noted, "[t]here is no bright line rule for determining whether an employee acts in his official capacity or in his capacity as a citizen." ROA 2124; *see also Williams*, 480 F.3d at 692 (recognizing that *Garcetti* "did not explicate what it means to speak 'pursuant to' one's 'official duties'"). *Garcetti* did set forth, however, a number of relevant factors including: whether the employee expressed views inside the office or publicly; the subject matter of the relevant communication; and, most importantly, whether or not the statements were made pursuant to an official duty. *Garcetti*, 547 U.S. at 420–21.

Other cases interpreting *Garcetti* provide additional guidance. Speech that is made in the course of performing or fulfilling job responsibilities is likely unprotected. *See Williams*, 480 F.3d 693 ("Job-required speech is not protected."). Even so, the "First Amendment protects some expressions related to the speaker's job," and neither a job description nor the fact that the speech related to the subject matter of the employment is dispositive. *Garcetti*, 547 U.S. at 421; *see also Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008) (noting that employee's emails "concerned topics far removed from the realm of—and unrelated to—any conceivable job duties," which pointed in favor of First Amendment protection). The district court weighed these considerations to determine whether Benes acted in his official capacity or as a private citizen when he emailed members of the Dallas City Council.

Several facts weigh in favor of finding that Benes wrote the email in his professional capacity. First, his email discussed the White Rock Spillway, a project in which he was professionally involved as an engineer. It explained that he "was directly responsible for these projects" and was the "City's designated representative, operation's Senior Engineer, and the final 'customer' for the projects in question." ROA 1357; *see Garcetti*, 547 U.S. at 421 (finding expressions made pursuant to official duties generally

7

unprotected). Second, the memo attached to Benes's email also stated that "[p]roviding project reports was (and is) my job responsibility, and if I would not have reported these inappropriate practices and project violations, I would not be performing (and in fact would be in violation of) my job duties and my professional and engineering ethics." ROA 1358; *see Garcetti*, 547 U.S. at 421. Third, although not dispositive, Benes signed the email—which was written on City of Dallas stationery—using his professional title "Senior Engineer" and "City of Dallas, DWU." *Cf. Charles*, 522 F.3d at 513 ("[I]t is apparent that Charles identified himself as a Commission employee solely to demonstrate the veracity of the factual allegations he was making in his e-mails to the legislators.").

The district court also highlighted that the emails were sent to the Dallas City Council to show that Benes's speech was made internally to his supervisors and therefore not protected. Although the court described the City Council as "within the same organization . . . as Benes" and "within [his] chain of command," ROA 2126, this factor is not clear cut. Benes's direct employer was the Dallas Water Utilities, so Dallas City Council members were not his direct superiors. On the other hand, they obviously have some authority over a city department like the Utility. *Compare Williams*, 480 F.3d at 694 (finding memo from school athletic director to office manager and principal at the same school was written in the course of performing job duties), *with Charles*, 522 F.3d at 513 (providing First Amendment protection when employee's speech was not made to higher-ups in his organization but rather to elected representatives).

Benes contends that Puckett's deposition testimony solves the *Garcetti* inquiry. She admitted that Benes's duties did not include making reports to the City Council or the Mayor, and that "waste of taxpayers' money by the City government is a matter of public concern." ROA 1812–13. But the fact that

No. 14-10951

Benes's emails "were not demanded of him" as part of his job "does not mean he was not acting within the course of performing his job." *See Williams*, 480 F.3d at 694; *Garcetti*, 547 U.S. at 424–25 (noting that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform" (internal citation omitted)).  With respect to the public concern comment, this is a different (though sometime related) question from the *Garcetti* "official duties" inquiry.  *See Williams*, 480 F.3d at 692 ("Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties.").  Therefore, Puckett's testimony does not resolve the question of whether Benes's email constituted protected speech.

This discussion of the relevant *Garcetti* factors shows that the case law does not clearly establish whether Benes was speaking pursuant to his job duties or as a citizen.  This is precisely the situation in which qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *See Al-Kidd*, 131 S. Ct. at 2085; *see also Gunaca v. Texas*, 65 F.3d 467, 474 (5th Cir. 1995) (explaining that public officials facing First Amendment retaliation lawsuits are often entitled to qualified immunity "because 'reasonable government officials, knowing only that they must not infringe on [employee free speech rights], would not necessarily know just what conduct was prohibited'"(quoting *Noyola v. Tex. Dept. of Human Res.*, 846 F.2d 1021, 1025 (5th Cir. 1988)); *Noyola*, 846 F.2d at 1025 ("There will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights.").  We therefore agree with the district court that Puckett did not violate clearly established rights and was entitled to summary judgment.  The judgment is AFFIRMED.

9