# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2013

No. 12-60753

Lyle W. Cayce
Clerk

LISA CARPENTER MOONEY,

                        Plaintiff - Appellant

v.

LAFAYETTE COUNTY SCHOOL DISTRICT,

                        Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:11-CV-50

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Three years after Plaintiff Lisa Mooney ("Mooney") supported a challenger in a local school superintendent election instead of the incumbent, who was supported by most of Mooney's colleagues, Defendant Lafayette County School District eliminated Mooney's position, resulting in the non-renewal of her employment contract and her termination. Mooney brought this suit under 42

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60753

U.S.C. § 1983 and Title VII, 42 U.S.C. § 2000e, *et seq.*, against the school district, alleging the non-renewal was retaliation (1) for engaging in political speech protected by the First Amendment and (2) for opposing unlawful gender discrimination. The district court granted summary judgment on behalf of Lafayette County[1] School District (LCSD) and dismissed Mooney's complaint. We reverse in part and affirm in part. We hold that Mooney has introduced sufficient evidence to overcome summary judgment on her First Amendment claim, that her political choice was a motivating factor in LCSD's decision to not renew her contract; but she has failed to introduce sufficient evidence – under Title VII's stricter standard – that her opposition to gender discrimination was the exclusive "but for" cause of her termination. Therefore, the district court's dismissal of her § 1983 claim is VACATED and the case is REMANDED for proceedings not inconsistent with this opinion. The dismissal of her Title VII retaliation claim is AFFIRMED.

I.

We begin by laying out the factual background. We do so recognizing that, on this review of the grant of summary judgment, we must do so in the most favorable light to Mooney, the non-movant. Mooney was hired as a speech pathologist by the defendant LCSD in 2001. She was a member of the staff of Lafayette Elementary, one of several schools in the district. Five years after Mooney was hired, Margaret Boyd ("Boyd"), the principal at Mooney's school, promoted Mooney to the position of assistant principal. Boyd had observed Mooney in the classroom and, in 2006, chose to promote her because she felt that Mooney was "well known in the community" and a "good fit for the school." Not long before receiving the promotion, Mooney also had won an award from the State of Mississippi, which she described in her deposition as recognition for her

---

[1] Lafayette County, Mississippi is located in the north-central region of the state. The county seat is Oxford.

No. 12-60753

being an "extremely organized and top-ranked administrator." It is unclear from the record, however, what, if any, previous administrative roles Mooney held.

Mooney's first year in the new role of assistant principal – 2007 – coincided with a local election in Lafayette County. LCSD's incumbent superintendent Mike Foster ("Foster") was running for re-election. His opponent was a special education teacher, Carolyn Davis ("Davis"). Mooney supported Davis in the election. Boyd and LCSD's assistant superintendent Ben McClung ("McClung") both openly supported the incumbent, Foster. They were aware that Mooney was a "Carolyn [Davis] fan," and discussed with each other Mooney's allegiance to Davis. Mooney testified in her deposition that, at one point during the campaign, she was asked by McClung to give money to buy newspaper ads in support of Foster and that she declined to give money and sign the ads, because she "did not feel [Foster] was best suited for the position" and because she felt "Carolyn [Davis] would be better." Mooney was not aware of any other teacher or administrator who refused to sign the Foster ads. It appears from the record before us that most teachers supported Foster, not Davis.[2]

Also during the campaign, Mooney says, McClung approached her a second time and requested that she supply adverse information about Davis in Davis's personnel file, presumably in an effort to harm her campaign. Mooney had attended a conference with Davis, and McClung allegedly wanted to know if Davis had said anything derogatory about him and Foster. Mooney declined to provide McClung with any information because she did not feel that it was appropriate to pass along Davis's personal thoughts regarding the campaign. McClung, for his part, expressly denies Mooney's allegations. In any event, the LCSD superintendent campaign continued, and Foster won re-election.

---

[2] At oral argument, LCSD confirmed this to be the case.

No. 12-60753

Then, things began to change for Mooney. Immediately following the November election, in late 2007 or early 2008, Mooney's on-the-job performance as assistant principal, according to Boyd, deteriorated. Boyd testified that although prior to this time period, Mooney had "done fine" in dealing with parents, suddenly she "no longer had that skill." Further, her punctuality and attendance previously "hadn't been an issue" but then began to suffer. In one instance, which LCSD uses to illustrate Mooney's decline, while supervising students on a school bus, Boyd said that Mooney "grabbed [a girl] by her arm and slung her into a seat." Despite her deteriorating performance, apparently no formal complaints were made against Mooney by LCSD until May 2009, roughly a year and a half after the problems purportedly began.

When a complaint was finally made, it only occurred simultaneously with Mooney being told that she was being demoted by returning her to her prior position as a speech pathologist. First, she was told the reason was the budget cuts, and it was suggested that her duties may be assumed by a male; however, after Mooney protested, the reason for her demotion changed: LCSD told her that the demotion was a result of her lack of punctuality and difficulty in handling parent relations. In a memorandum of protest, Mooney denied any performance problems, describing parent surveys showing that the parent satisfaction ratio at her school was equal to or better than any other school in the district, and documenting a decrease in disciplinary problems at the school since she had been assistant principal. The memo noted that her education level and her experience exceeded male administrators; it then asked whether she was not being transferred to another administrative role "because [she] was a woman." LCSD then allegedly shifted a second time. LCSD decided not to demote Mooney at all; instead, it lodged complaints about Mooney's performance and placed her on a "performance improvement plan" (PIP) for the upcoming school year, 2009-2010.

The PIP designated punctuality and parent relations as two problems that needed to be remedied by Mooney. Mooney initially showed progress under the plan, but by the end of the year, according to Boyd, she had not improved to a sufficient extent. This year-end conclusion was based, at least in part, on an incident that happened during the year of the PIP. In September 2009, Mooney was investigated following the strip search of an eight-year-old boy. The boy appears to have been a known troublemaker, with four previous behavior reports on file because of his stealing of personal items on school grounds. On the day in question, a teacher and student told Mooney and others that the boy had put a roll of tape, school property, down the front of his pants. Mooney escorted the boy into the bathroom and made him pull down both his pants and underwear. No tape was found. This strip search was a violation of LCSD policy, which only allows for strip searches in emergency situations. Mooney was formally reprimanded by Boyd.

Also during the 2009-2010 school year, Mooney appears to have been tardy on many occasions. LCSD has introduced a list showing dozens of times that Mooney clocked in after 7:15 a.m. – the time at which she was required to be at school – or not at all. Although in prior years, Mooney had not been required to clock in, in 2009, under the improvement plan, Boyd required Mooney to document her arrival time.

Finally, in March 2010, a reduction in force (RIF) was ordered by Foster to be implemented by Boyd. As part of her cost-cutting strategy, Boyd says that she chose to eliminate several teacher and staff positions and not renew Mooney's assistant principal contract in May 2010. Mooney, however, contends that this reason for the non-renewal of her contract – the RIF– is pretextual, pointing to an email from Boyd to Foster that listed all the positions to be eliminated in the RIF but did not include Mooney's name or position. Mooney alleges that, Foster, Boyd's boss and the candidate whom Mooney did not

No. 12-60753

support in the earlier election, did not follow the list and instead chose to retaliate against Mooney by not renewing her contract.[3] Mooney was the only administrator in the district who was removed from her position as part of the RIF, but "23 to 24 other positions" were eliminated, and roughly $400,000 was saved by LCSD. LCSD did not hire another assistant principal during the year of the RIF. When it did rehire, the district chose a female for the position.

Mooney filed suit on April 6, 2011, pursuant to 42 U.S.C. § 1983 and Title VII, 42 U.S.C. §§ 2000e-2000e-17, asserting that her contract was not renewed in retaliation for engaging in speech protected by the First Amendment and in retaliation for Mooney's opposing gender discrimination, in violation of Title VII. The district court granted summary judgment on behalf of LCSD, and Mooney timely appealed.

## II.

We review the district court's grant of summary judgment *de novo*. *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 635 (5th Cir. 2002). Summary judgment is proper if, after adequate opportunity for discovery, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When assessing whether a dispute as to any material fact exists, we consider all the evidence in the record but refrain from making credibility determinations or weighing the evidence; instead, we draw all

---

[3] At oral argument, LCSD mentioned that it had neglected to insert into the record an extra page of Boyd's RIF list to Foster, which allegedly proved Mooney was incorrect in stating that her position was not one that was originally planned to be eliminated. We may not consider any additional pages of Boyd's emailed list that are outside of the record. "[T]his court is barred from considering filings outside the record on appeal, and attachments to briefs do not suffice." *In re GHR Energy Corp.*, 791 F.2d 1200, 1201–02 (5th Cir. 1986).

No. 12-60753

reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### III.

The question before us is whether the district court erred in dismissing Mooney's First Amendment and Title VII retaliation claims. Most basically, Mooney's argument is that she was an ideal employee until the 2007 superintendent election, when she supported Davis, instead of Foster. Her support for Davis, she claims, was not well-received by her superiors, and these political views set off a series of events: suddenly, and unjustifiably, LCSD began to cite her "deteriorating" job performance and tardiness, neither of which had before been alleged, and then these sham justifications, along with the RIF, became a convenient, pretextual reason to not renew her contract. She further contends this non-renewal violated (1) the First Amendment because it was retaliation for protected political activity and (2) Title VII because it was, at least in part, a response to her allegation of gender discrimination in her 2009 memorandum of protest. We analyze these two claims separately below.

### A.

We begin with Mooney's § 1983 claim: "It is well established that the First Amendment places certain constraints upon dismissals from public employment based upon political affiliation and speech." *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 704 (5th Cir. 1998). The Supreme Court has said that "a nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that [s]he is satisfactorily performing upon the sole ground of h[er] political beliefs." *Elrod v. Burns*, 427 U.S. 347, 375 (1976) (Stewart, J., concurring). Similarly, this court has held that "[a] state may not discharge an employee for exercising [her] right to free speech on matters of public concern." *Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir. 1988).

No. 12-60753

In short, the First Amendment precludes a discharge based upon an employee's exercise of her right to free expression if two criteria are satisfied: first, the expression *relates to a matter of public concern*, *see Connick v. Myers,* 461 U.S. 138, 146 (1983), and, second, the employee's interest in commenting upon matters of public concern *must outweigh the public employer's interest* in promoting the efficiency of the public services it performs through its employees. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Thus, in order to prevail on her First Amendment retaliation claim, Mooney must show that (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in speaking outweighed the employer's interest in promoting efficiency in the workplace; and (4) the speech motivated the employer's adverse employment action. *Charles v. Grief*, 522 F.3d 508, 510 n.2 (5th Cir. 2008). The Fifth Circuit has made clear that, if the *prima facie* elements of a First Amendment retaliation claim are met, the claim is then evaluated under the "mixed-motive" framework – not the *McDonnell Douglas* pretext analysis. *Id.* at 516 n.28; *see also Gonzales v. Dallas Cnty., Tex.*, 249 F.3d 406, 412 n.6 (5th Cir. 2001).[4]

Mooney has met the first three prongs of the *prima facie* test. First, the non-renewal of her contract constituted a termination of employment, an adverse employment action. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are *discharges*, demotions, refusals to hire, refusals to promote, and reprimands.") (emphasis added) (internal quotation

---

[4] Recently, the Supreme Court ruled that Title VII retaliation claims, like the one addressed *infra* herein, must be proved according to traditional principles of but-for causation, rather than the lessened "motivating factor" causation test provided in 42 U.S.C. § 2000e-2(m). *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — S. Ct. — (June 24, 2013), 2013 WL 3155234 at *14. The holding in *Nassar*, however, does not apply to the First Amendment causation standard, which requires only that protected speech be a "substantial" or "motivating" factor in the adverse employment action suffered by the plaintiff, *see Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Thus, we adhere to the *Mt. Healthy* standard here.

marks omitted). Second, her support for Davis relates to a matter of public concern, an expression of opinion concerning a local election. *See Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995) (holding that "associating with political organizations and campaigning for a political candidate" relate to a matter of public concern).[5] Third, there is no evidence that Mooney's support for Davis caused a disruption at her place of employment.[6]

## B.

Whether Mooney has satisfied the fourth prong, relating to causation, is a closer question. Under the fourth prong, a plaintiff must show that her protected speech was a *motivating factor* in her discharge. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001) (emphasis added). Thus, to satisfy this prong, Mooney must at least establish that one of the reasons for her non-renewal was her support for Davis. The district court's analysis of the First

---

[5] For the purposes of its analysis, the district court assumed *arguendo* that Mooney engaged in protected speech, but noted that she failed to show that she openly campaigned against Foster and for Davis. According to the district court, Mooney:

> simply asserts that she declined to file a report against Davis and declined to contribute money to Foster's campaign. While she contends that her support of Davis was generally known throughout the district, she has directed the court *to less than compelling evidence that the District should be charged with this knowledge.*

(Emphasis added.) We have, however, found evidence in the record before us that: (1) various officials at LCSD knew that Mooney supported Davis, (2) Mooney had expressed her Davis support verbally to co-workers, and (3) LCSD knew that Mooney had attended a meeting with Davis regarding the campaign. *See Rankin v. McPherson*, 483 U.S. 378, 386–87 n.11 (1987) ("The private nature of [a] statement does not . . . vitiate the status of the statement as addressing a matter of public concern.").

[6] Under the third prong of the First Amendment retaliation test, the employee's interest in "commenting upon matters of public concern" must outweigh the public employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. The essence of the *Pickering* test is whether a plaintiff's political views, when expressed in a workplace, disrupted the office's efficiency or ability to effectively render public services. *See, e.g., Branton v. City of Dall.*, 272 F.3d 730, 741 (5th Cir. 2001).

No. 12-60753

Amendment claim focused on this "causal connection" prong, and the court concluded that Mooney had "not met [her] burden" with respect to it.

Close timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a *prima facie* case of retaliation. *See Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001). With this in mind, the district court considered the temporal proximity in Mooney's case. For the district court, the proper time period to consider was the period between Mooney's protected activity and her non-renewal, a period of almost three years, and one far too long to support an inference of retaliation. It is not that, facially, this statement is incorrect; however, temporal proximity between protected activity and an adverse employment action should be viewed in the context of other evidence.[7] The causal connection prong, for example, may also be satisfied when the plaintiff relies upon a chronology of events from which retaliation may plausibly be inferred. *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997).

Mooney has presented such a chronology: first, (in school year 2007–008) LCSD suddenly began to criticize her performance immediately after the election but failed to produce any formal disciplinary write-ups detailing Mooney's performance, then (in 2008–2009) LCSD tried to demote Mooney, for varying reasons, ultimately deciding not to because she protested on the basis of gender

---

[7] *See, e.g.*, *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (where the court considers evidence other than, and in addition to, temporal proximity evidence in a retaliation causation analysis); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992) (stating that temporal proximity is just "one of the elements in the entire calculation of whether [plaintiff] had shown a causal connection between the protected activity and the subsequent firing [of plaintiff].").  Indeed, in a Tenth Circuit case that has been cited favorably by the Fifth Circuit and the Supreme Court, a court held there was no need to consider whether temporal proximity alone was sufficient because the plaintiff "presented additional evidence from which a reasonable jury could find causation." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).

No. 12-60753

discrimination, and, finally, (in 2009–2010) Foster, the official in charge of the RIF – and the political rival – along with Boyd, a rival supporter, terminated her position, when it became convenient to do so. This sequence of events is enough for a reasonable juror to infer retaliatory causation, especially considering that the "causal link" need only be that her protected activity was one reason motivating LCSD's decision. *See Evans*, 246 F.3d at 354. Although it is true that the ultimate decision to not renew her contract occurred three years after the protected activity, the chain of circumstances outlined above, as reflected by deposition testimony in the record before us,[8] began immediately after the election and, drawing all inferences in Mooney's favor, is enough to raise a genuine issue of material fact regarding the causal connection.

## IV.

But Mooney has not established her right to a trial yet. In First Amendment retaliation cases involving public employees, once an employee has met her burden of showing that her protected conduct was a motivating factor in the employer's adverse employment action, the question becomes whether the employer has met its burden to show, by a preponderance of the evidence, that it would have taken the same adverse employment action against the employee even in the absence of the employee's protected conduct. *See Charles*, 522 F.3d at 516 n.28. If the employer is able to make such a showing, then the protected conduct in question does not amount to a constitutional violation justifying remedial action. *Id.*

---

[8] In particular, we refer to the testimony of Boyd, Mooney's direct supervisor, who stated that (1) she (Boyd) supported Foster in the election and "probably" gave money to his campaign, (2) she considered it "an important factor for all of us at school who our boss would be" and thought that she and her co-workers "all need[ed] to support [Foster]", (3) Mooney's job performance began to suffer immediately following the election, even though Mooney's performance had never before been a problem, and (4) Boyd couldn't "claim to say specifically [which] incident[s]" caused the change. We also refer to the deposition testimony of Mooney and Foster, which indicates LCSD changed its mind regarding Mooney's demotion and, at various times, gave differing rationales for disciplining Mooney.

Whether LCSD, by a preponderance of the undisputed evidence, has shown it would not have renewed Mooney even in the absence of her support for Davis is another close question.  In the district court's view, LCSD had sufficiently made this showing.  In particular, the court pointed to three of LCSD's alleged rationales for not rehiring her: (1) Mooney's poor job performance, (2) lack of punctuality in arriving to work, and (3) the district's need to effect cost savings through the RIF.

Regarding Mooney's poor job performance, Boyd testified in her deposition that, at the time, she could not remember the names of any children or parents who complained about Mooney.  She also stated that, other than the PIP (which was not instituted until a year and a half after Mooney's alleged poor performance began) there were no formal disciplinary write-ups of Mooney.  Further, although Boyd cited two incidents – the "slinging" of a student into her seat on a school bus and the strip search of a student – as evidence that Mooney was not performing adequately, the evidence is disputed whether and the degree to which these incidents influenced Mooney's non-renewal.  Half the students who were interviewed regarding the bus incident stated that Mooney had only raised her voice at the student and never used physical force, and the strip search was in violation of LCSD policy, but Mooney was reprimanded of it.  For her part, Mooney, in her memorandum of protest to the complaints lodged against her, introduced statistical data indicating that parents of Lafayette Elementary were increasingly pleased with school administration during her tenure as assistant principal.  LCSD does not challenge this data.  In short, then, LCSD's first purported nondiscriminatory reason for non-renewing Mooney's contract is disputed.

As for Mooney's alleged lack of punctuality, the time logs introduced into the record indicate that Mooney was late in arriving to work during the fall of 2009, among other times.  Yet Boyd testified that, during that same period, "in

the fall [of 2009], I did tell [Mooney] that things were going pretty good." Again, then, the evidence regarding LCSD's second reason for not renewing Mooney is disputed, because it is unclear whether punctuality was really a problem relating to her continued employment.[9]

Finally, there is the RIF, ordered by Foster in order to meet state cost-cutting requirements. Foster gave instructions and had at least some say over which licensed employees were non-renewed, and it was carried out by Boyd, who was a Foster supporter and "probably" had contributed money to Foster's campaign. It is undisputed that Mooney was the *only* administrator in the district who was removed from her position as part of the RIF.[10] Thus, there remains a genuine issue of material fact of whether LCSD would have non-renewed Mooney even in the absence of her Davis support, because its purported rationales for doing so, as rebutted by Mooney, may be pretextual.

V.

We last address Mooney's claim based on Title VII retaliation. She asserts that when she was advised of her demotion back to speech pathologist, she suggested that the demotion constituted gender discrimination, because her putative replacement would be a male. She alleges that, because of this complaint, the school district retaliated against her by terminating her contract. This Title VII retaliation claim is unsupported by any evidence connecting gender to her termination.

---

[9] Boyd does not explain, for example, how punctuality was not a problem in the fall, but was a problem in the spring. During both periods, Mooney arrived late to work (according to the time logs), yet it appears that during at least one of those periods, her performance was "pretty good."

[10] In their deposition testimony, Foster and Boyd stated that the other positions eliminated by the RIF, generally speaking, were janitorial staff and assistant teachers. LCSD does not offer a persuasive reason for why Mooney's *specific* position was eliminated. And at oral argument, LCSD confirmed that no other administrative staff – counselors, secretaries, or other assistant principals in the district – were eliminated in the RIF.

No. 12-60753

It does not matter that Mooney has proved the other required *prima facie* elements of Title VII retaliation because, crucially, she has not introduced any evidence of causation. *See Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (stating one *prima facie* element in a Title VII retaliation claim is a "causal link . . . between the protected activity and the adverse action."). Whereas, under her First Amendment claim, Mooney has pointed us to a chronology that began immediately after an *election*, involved a *political rival* and one of his *supporters* who happened to be Mooney's direct supervisor, Mooney has not pointed us to any comparable evidence suggesting gender animus on the part of Boyd, who considered demoting her. Thus, although Mooney has satisfied the *prima facie* causation prong for the purposes of her First Amendment claim, she has not done so for the purposes of her Title VII claim.[11] Furthermore, as LCSD points out in its brief, Mooney was replaced by a female. In short, there is simply no evidence that Mooney's non-renewal was related to gender-based discrimination.

## VI.

In sum, we hold that Mooney has put forth sufficient evidence that her political views were a motivating factor in LCSD's decision to non-renew her employment contract to survive summary judgment. Thus, the district court's dismissal of that claim is VACATED and the case is REMANDED for further proceedings not inconsistent with this opinion. The district court's dismissal of Mooney's Title VII retaliation is AFFIRMED.

AFFIRMED in part; VACATED and REMANDED in part.

---

[11] Recently, the Supreme Court held that Title VII retaliation claims, under the language of the statute itself, must be proved according to traditional principles of but-for causation, not the lessened "motivating factor" standard stated in 42 U.S.C. §2000e-2(m). *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, – S. Ct. – (June 24, 2013), 2013 WL 3155234 at *14. This factor certainly makes it no easier for Mooney with respect to this claim.