# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30524

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2016

Lyle W. Cayce
Clerk

MICHAEL ANTHONY CRIPPS; JOHN DAVID CRIPPS,

Plaintiffs - Appellants

v.

STATE OF LOUISIANA DEPARTMENT OF AGRICULTURE AND
FORESTRY; STRUCTURAL PEST CONTROL, Commission;
DAVID FIELDS, In his individual capacity,

Defendants - Appellees

-------------------------------------------------------------------

WILLIE CRIPPS,

Plaintiff - Appellant

v.

STATE OF LOUISIANA DEPARTMENT OF AGRICULTURE AND
FORESTRY; STRUCTURAL PEST CONTROL, Commission; DAVID M.
FIELDS, In his Individual capacity,

Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, and OWEN, and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

No. 15-30524

In the years following hearings before the Louisiana Department of Agriculture and Forestry ("LDAF" or the "Commission") for violations of Louisiana's Pest Control Laws, Plaintiffs Michael, David, and Willie Cripps filed this 42 U.S.C. § 1983 suit against Defendants LDAF and LDAF's Assistant Director David Fields ("Fields"), in his individual capacity. Plaintiffs contend that (1) Defendants retaliated against them for complaining before the Commission and others in violation of the First Amendment and Louisiana Constitution Art. I, § 7; (2) Defendants violated Plaintiffs' substantive due process rights under both the Fourteenth Amendment and Louisiana Constitution Art. I, § 2, following administrative rulings by the Commission that curtailed Plaintiffs' ability to continue their profession; and (3) the Commission imposed excessive fines on Plaintiffs in violation of both the Eighth Amendment and Louisiana Constitution Art. I, § 20. Plaintiffs also argue that the district court erred in finding Fields entitled to qualified immunity. Following rulings in favor of Defendants on summary judgment, Plaintiffs appealed. We AFFIRM.

## I.    Facts

### A. The Louisiana Department of Agriculture and Forestry

The Louisiana Structural Pest Control Commission was created within the Louisiana Department of Agriculture and Forestry by the Louisiana Pest Control Law. La. Stat. Ann. § 3:3363. The purpose of the Commission is to adopt and implement rules and regulations that protect the interests, health, safety, and welfare of the public. La. Stat. Ann. § 3:3366. The Commission is made up of five members: a quorum of three members, and the votes of three members are required to take any action. La. Stat. Ann. § 3:3363(D). The Commission members select the Director and Assistant Director of the Commission, "subject to the approval of the commissioner." La. Stat. Ann. §

No. 15-30524

3:3364(B). In addition to imposing civil penalties for violations of the Pest Control Laws, La. Stat. Ann. § 3:3371, the Commission may issue subpoenas for the production of records and for the attendance of witnesses at Commission hearings, La. Stat. Ann. § 3:3365(E)(1). Commission employees have statutory access only to "premises where there is reason to believe that structural pest control work is being conducted for the purpose of sampling pesticides and inspecting and observing the application of any pesticide," but "only during reasonable hours and only upon presentation of proper credentials." La. Stat. Ann. § 3:3365(C).

### A. Michael and David Cripps

Michael and David Cripps are brothers who worked in the pest control industry for numerous years. David Cripps operated the business Innovative Pest Management, and Michael Cripps was his employee. Between 1999 and 2000, David Fields, then Assistant Director for Environmental and Pesticide Programs at LDAF, notified Michael and David Cripps that each would be fined for having committed multiple violations of the LDAF Structural Pest Control Law.[1] The Commission entered into a stipulation in which neither Michael nor David Cripps admitted or denied the Commission's allegations but agreed to a civil fine. Pursuant to the stipulations, Michael Cripps was fined $5,000, with $4,000 being suspended, and David Cripps was fined $17,000, with $12,000 being suspended. Individually, Michael Cripps was responsible for $1,000 and David Cripps for $5,000. Neither paid the fines.

---

[1] David Cripps was charged with twenty violations of the Louisiana Pest Control Law, La. Stat. Ann. § 3:3201 *et seq.* His main offenses included violations of La. Stat. Ann. § 3:3371A(1), (7), (13), and (14). Michael Cripps also committed numerous minor and moderate violations of the Louisiana Pest Control Laws. La. Stat. Ann. §§ 3:3371, 3:3372.

No. 15-30524

On May 25, 2000, the LDAF mailed David Cripps a letter requesting that he remit payment for his prior fine or additional sanctions could result. The Commission informed David Cripps of its intent to bring charges against him for failing to pay the stipulated fine and scheduled a hearing to allow David Cripps the opportunity to address the Commission in response to the charges. Despite David Cripps' testimony, the Commission imposed a penalty of $5,000 following the hearing. The Commission agreed to suspend $4,000 of the penalty pending David Cripps' payment of the past due fine. David Cripps did not pay his 1999 or 2000 fines and was notified via letter that his license would be suspended effective August 7, 2001.

On September 1, 2000, Michael Cripps similarly received notice of his alleged violation of the Structural Pest Control Law for failing to pay a fine previously imposed in 2000 for paperwork violations.[2] Michael Cripps did not attend an adjudicatory hearing set by the Commission for October 4, 2000. On October 31, 2000, due to Michael Cripps' failure to pay the requisite amount, the Commission increased the fine to $10,000, pursuant to La. State. Ann. § 3:72(C)(3)(e), and required full payment within 30 days.

Several years later, in 2011, Michael Cripps sought recertification from the LDAF as a condition of employment with the company Terminix. Fields mailed Michael Cripps a letter denying his registration request because of his previous violations of the Structural Pest Control Law. Fields informed Michael Cripps that he would have an opportunity to discuss his registration as a pest control employee at a hearing before the Commission.

---

[2] A major violation mandates a penalty of "not more than five thousand dollars." La. Stat. Ann. § § 3:3372(A)(3). Such a violation includes "[a]ny failure to timely pay any civil penalty imposed by the commission, or any failure to timely pay any fee collected by the commission." La. Stat. Ann. § 3:3371(C)(3)(e).

4

No. 15-30524

In order to rebut the Commission's assertions that there was a violation of the law, on August 3, 2011, Michael appeared at a hearing in order to reinstate both his license and that of David Cripps. [3]  Michael Cripps detailed the numerous ways in which he believed Fields' conduct was wrongful.  A Commission member proposed an initial motion to deny Michael Cripps and David Cripps' licenses unless payment of the full balance with interest was made.  A substitute motion was then made, which applied only to Michael Cripps.  The Commission voted unanimously to deny Michael Cripps' license until he paid the levied fines and appeared before the Commission.[4]

Because the Commission did not approve his registration, Michael Cripps was unable to do business as a salesperson for any pest control company.  Michael and David Cripps filed suit against Defendants as a result, asserting Section 1983 claims under the First, Eighth, and Fourteenth Amendments.

*B. Willie Cripps*

Willie Cripps, the father of Michael and David Cripps, also filed suit against Defendants.  Willie Cripps is a licensed pest control operator and holds a structural pest control license from the Commission.  In July 2010, Toby Richmond, an LDAF inspector, received a complaint from Bob Hogan, a

---

[3] David Cripps was also present at the Commission hearing, but did not address the Commission, and the Commission took no action against him.  During the Commission meeting, a Commission member stated that he had received a request from David Cripps to address the Commission but had failed to add the item to the agenda.  Following a successful motion to amend the agenda to add David Cripps, the Commission member located David Cripps in the building.  When asked if he would like to address the Commission, David Cripps declined.

[4] Michael Cripps brought a procedural due process claim against Defendants for their denial of his registration request.  He argued that Defendants violated his right to procedural due process by refusing to grant him registrant status without prior notice or hearing.  La. Stat. Ann. § 3:3369.  Michael Cripps filed a motion to dismiss, which the court granted.  The claim was subsequently settled.

homeowner in Deridder, Louisiana, that Willie Cripps was incorrectly treating client properties when performing termiticide sprays.[5] Richmond requested records from Willie Cripps regarding the treatment but Willie Cripps' was unable to produce the requested documentation to show the extent of treatment conducted on the property or the date and time such treatment occurred. LDAF notified Willie Cripps that it would require him to re-treat one property at issue. Between November 2010 and February 2011, Willie Cripps corresponded with the LDAF and its officials, asserting that its request that he retreat any properties was in violation of the Federal Insecticide, Fungicide, and Rodenticide Act.[6]

On April 14, 2011, Willie Cripps addressed the Commission without counsel in order to rebut Richmond's directive to re-treat the Deridder property. Immediately thereafter, the Commission passed a resolution allowing LDAF staff to examine Willie Cripps' business records of a previously treated property. Willie Cripps turned over the Deridder property business records to Richmond on April 29, 2011. In reviewing these records, the Commission found Willie Cripps in violation of twelve separate offenses under Louisiana's pesticide law, including paperwork violations and his failure to use the proper amount of chemicals to treat termites, and assessed civil penalties.[7]

---

[5] The Deridder property was under contract for pest control by Lasalle Exterminating, Plaintiffs' company at the time of the request. After receiving the complaint, Richmond arrived at the property and conducted a visual inspection of it.

[6] Willie Cripps argues that the original treatment required of the pest control product "Termidor SC" was for the purpose of preventing ground infestations of termites. The subsequent infestation was caused by Formosan termites that resulted from a roof leak. He informed the Commission that any re-treatment that was required was not due to his treatment of ground infestation, but because of a separate unrelated incidence of the leak. Willie Cripps requested documentation from the Commission that would show that they were allowed to order him to re-treat the structure, but the Commission denied Willie's request.

[7] Under the LDAF Pest Control Law, "[a] moderate violation is any act of negligence in meeting the guarantees of an agreement for structural pest control work including but not

Willie Cripps received notice of these violations in a June 28, 2011, letter from the LDAF.

Willie Cripps was notified of his violations and of the opportunity to address the Commission on August 3, 2011, the same date that Michael Cripps was scheduled to appear before the Commission. At the hearing, the LDAF presented evidence in the form of documents and testimony of witnesses rebutting Willie Cripps' position that he properly applied the pesticide treatments. The LDAF established that the industry standard required Willie Cripps to use four gallons of treatment per ten linear feet per foot of depth. Willie Cripps used half that amount. Following Willie Cripps' testimony, the Commission unanimously voted that he was guilty of all charges and imposed fines. In its resolution, the Commission stated that LDAF staff would be permitted to inspect the records of all wood-destroying insect treatments done by Willie Cripps to determine whether he may have committed other violations. The resolution stated that Willie Cripps' would be required to re-treat each property that is not in compliance with the law. The Commission issued a Notice of Inspection on September 30, 2011, and sent an inspector to review Willie Cripps' records. Willie Cripps refused to allow an inspector in his home without a warrant.

## II.    Procedural History

Plaintiffs sought declaratory and injunctive relief and damages under 42 U.S.C. § 1983 and Louisiana state law. The parties filed cross motions for summary judgment. Michael Cripps argued first that his procedural due

---

limited to failure to apply pesticides in accordance with the label or failure to comply with minimum specifications adopted by the commission. A violation which is not a minor violation or a major violation shall be a moderate violation." La. Stat. Ann. § 3:3371(C)(2). The accompanying fine may be five thousand dollars. *See* La. Stat. Ann. § 3:3372(A)(2).

process rights were violated when Defendants deprived him of his liberty interest in pursuing an occupation by fining him without first having the benefit of an adjudicatory hearing. Willie Cripps similarly filed a Motion for Partial Summary Judgment, requesting that the court prevent the re-litigation of issues previously decided by the 19th Judicial District of the State of Louisiana. The district court found Michael Cripps' argument compelling, granting partial summary judgment on his procedural due process claims, but denied Willie Cripps' motion.

Defendants filed a Motion for Partial Summary Judgment as to Willie Cripps and a Motion for Summary Judgment as to Michael and David Cripps. Defendants argued that (1) Plaintiffs put forth no evidence to support a First, Eighth, or Fourteenth Amendment violation; and (2) Fields is entitled to qualified immunity. The court granted summary judgment in favor of Defendants as to these remaining claims.

Plaintiffs timely appeal. On appeal, Plaintiffs argue that the district court erred in (1) granting summary judgment in favor of Defendants on their First Amendment retaliation claim; (2) granting summary judgment in favor of Defendants on Plaintiffs' substantive due process claim; and (3) dismissing Plaintiffs' Eighth Amendment claims by ruling that the Excessive Fines Clause of the Eighth Amendment is not applicable to the states through the Fourteenth Amendment. Plaintiffs asserted state law claims against Defendants corresponding to these same offenses. Plaintiffs also argue that the district court erred in finding Fields entitled to qualified immunity.

## III. Standard of Review

This Court reviews grants of summary judgment *de novo*, applying the same standard as the district court. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 401 (5th Cir. 2005). If no genuine issue of material fact exists, summary

judgment is appropriate and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).  The court views the evidence in the light most favorable to the non-movant.  *Wheeler*, 415 F.3d at 401–02.  The non-movant must produce specific facts indicating a genuine issue for trial to avoid summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Summary judgment is appropriate, however, if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Odom*, 448 F.3d at 752 (quoting *Celotex*, 477 U.S. at 322–23).

## IV.    Analysis

### A. *First Amendment Retaliation*

This court has never had the occasion to consider whether First Amendment retaliation has occurred where an administrative agency imposes fines, suspends or denies a registrant's license and registration, or requires a registrant to provide access to its employment records following client complaints after the registrant appeared before the agency.  However, our conclusion follows from earlier precedents.  The First Amendment prohibits both direct limits on individual speech and adverse governmental action against an individual in retaliation for the exercise of protected speech activities.  *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  Similarly, Article I, § 7 of the Louisiana Constitution provides: "No law should curtail or restrain the freedom of speech or of the press.  Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

No. 15-30524

While most First Amendment retaliation cases involve an employment or other contractual relationship between the plaintiffs and governmental officials, a claim may also be brought by an ordinary citizen. *See id.* at 258. To prevail on a First Amendment retaliation claim in this instance, a party must establish that: (1) they were engaged in a constitutionally protected activity; (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct. *See id.*

In reviewing the Commission's conduct, Plaintiffs present evidence of two incidents: (1) Michael Cripps appeared before the Commission and made inflammatory comments about Fields and the Commission in order to show the disdain that Fields had for Plaintiffs; and (2) Willie Cripps made several complaints, to the Commission and others in the pest control industry, in response to the Commission's request to inspect his work records and that he re-treat properties, which resulted in an adverse action by the Commission. Plaintiffs' arguments rest, first, on the assumption that Fields was directly involved in the decision-making process and influenced the Commission to rule against them, and second, that the closeness in time between Michael Cripps and Willie Cripps' statements and letters before the Commission's vote clearly shows retaliatory action.

Michael Cripps alleges that the Commission's August 3, 2011, determination was retaliatory because he was vocal about his grievances before the Commission and others. At this Commission hearing, Michael Cripps stated: (1) Fields, through his position at the LDAF, displayed anger toward Michael and David Cripps; (2) following LDAF's accusation that David Cripps improperly treated properties, and the Commission's request that the

10

properties be re-treated, David Cripps no longer had favorable experiences with his clients; (3) Fields refused to disclose soil samples that would show that properties Willie Cripps serviced had not been adequately treated; (4) Fields denied Michael and David Cripps the ability to enter an adjudicatory hearing on January 27, 1999, to address alleged violations of the Louisiana Pest Control Law; and (5) Fields allegedly demanded that the brothers sign a stipulation showing guilt. Following Michael Cripps' oration, the Commission passed a motion to deny Michael Cripps' request to have both his license and registration reinstated until he paid the imposed fine including interest. The district court concluded that Defendants' actions, even when viewed in the light most favorable to Plaintiffs, presented no genuine issue of material fact. We agree.

First, while Michael Cripps "provided a scathing rebuke of defendant David Fields," Fields himself did not engage in retaliation against Michael Cripps. Fields did not vote to deny Michael Cripps' registration, nor has Michael Cripps provided any direct evidence showing that his protected speech was the cause of any adverse action Defendants took. In fact, the entity that voted on August 3, 2011, was the Commission alone. Fields, who was not a sitting member of the Commission, did not propose any of the motions related to Michael Cripps, nor did he have a vote on any of the motions proffered at the meeting.

Next, Michael Cripps essentially asks us to subject all actions by a Commission following a hearing to a First Amendment retaliation claim merely because of the closeness in time between an individual's petition to the Commission and the Commission's decision. We decline to do so. As the district court found, "the close proximity between the plaintiff's presentation and the Commission's action was a byproduct of the general procedure in these

11

type of commission meetings—a committee attempts to entirely deal with each item on its agenda as they are presented at the meeting." The Commission meeting minutes show this clearly—the Commission addressed each issue or person before it in full before moving on to the next. While circumstantial evidence may show improper motive, the evidence here fails to undermine Defendants' lawful decision to impose sanctions on Plaintiffs for violating state law, and merely relying on such temporal proximity between the conduct and any adverse action here is insufficient to show First Amendment retaliation. C*f*. *Tompkins v. Vickers*, 26 F.3d 603, 609–10 (5th Cir. 1994). Though "[c]lose timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a prima facie case of retaliation," the court should view temporal proximity between the activity and the adverse action in the context of other evidence. *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013).

Second, David Cripps fails to establish a genuine issue of material fact as it relates to both the second and third requirements of a First Amendment retaliation claim. The district court found, and we agree, that David Cripps did not actually suffer any injury because the Commission took no action against him following the August 3, 2011, hearing. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) (noting that § 1983 is a tort statute and that "[a] tort to be actionable requires injury," which, in this context, is the deprivation of a constitutional right). David Cripps experienced no change in his license and registration status following the hearing. Similarly, in order to show First Amendment retaliation, there must be conduct by an official acting under color of state law. *See Keenan*, 290 F.3d at 258; *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999) ("As a general rule, the First Amendment prohibits not only

direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms."). No such action occurred here. Despite the fact that Michael Cripps requested that the Commission reinstate David Cripps' license at the August 3, 2011, hearing, the Commission's first offered motion to prevent the reinstatement of David Cripps' license was superseded by a later motion that solely referenced Michael Cripps. The Commission's failure to make a ruling regarding David Cripps is neither an action by Defendants causing him to suffer an injury nor substantially motivated against his exercise of constitutionally protected conduct. Without more, David Cripps fails to create a genuine issue of material fact.

Finally, Willie Cripps claims that Defendants retaliated against him by baselessly charging him with violations of the Pest Control Law, finding him guilty of these charges, and subsequently ordering and attempting to search his home without a search warrant or reasonable suspicion. Willie Cripps relies on *Hartman v. Moore* for the proposition that "when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, [courts] have held that retaliation is subject to recovery as the but-for-cause of official action offending the Constitution." 547 U.S. 250, 256 (2006). Reliance on *Hartman* is misplaced. Willie Cripps, like his son, relies on both Fields' presence at the Commission meeting as well as the closeness in time between his actions and the Commission's decision to show retaliation. As explained, Fields' mere presence and the closeness in time between the First Amendment speech and the Commission's decision are insufficient to show a violation of a clear mandate under state law. The record reflects that Defendants' decision was directly supported by the reasonable belief that Willie Cripps failed to use

13

the proper amount of termiticide in the treatment of properties, a direct violation of state law.

It is evident that among the claims Plaintiffs made, none were that the regulations or statutes under which the Commission acted were unconstitutional. To the contrary, Plaintiffs' complaint is that this exercise of authority is unconstitutional as to them. Plaintiffs fail, however, to provide substantiated evidence that the Commission acted beyond its regulatory authority. Put in context, the Commission was within its regulatory bounds to take the action it did.

Accordingly, we decline the invitation to overturn the administrative decisions in this case merely because they are adverse to Plaintiffs. Plaintiffs failed to establish a genuine issue of material fact and summary judgment was proper. As summary judgment is proper as to Plaintiffs' First Amendment claims, summary judgment is also proper on Plaintiffs' Article I, § 7 state law claims. *See Davis v. Allen Par. Serv. Dist.*, 210 F. App'x 404, 413 (5th Cir. 2006) (finding summary judgment proper for claim brought under the Louisiana Constitution where the court granted summary judgment on § 1983 First Amendment claim).

*B. Substantive Due Process*

We next address Plaintiffs' second constitutional claim: the allegation that Defendants violated their Fourteenth Amendment substantive due process rights. At the outset, we hold that summary judgment was properly granted. The Fourteenth Amendment of the United States Constitution provides that no state shall deprive any person of "life, liberty, and property, except by due process of law." U.S. Const. amend. XIV, § 1. The Louisiana Constitution provides the same due process protections as that of the United States Constitution. *See Progressive Sec. Ins. Co. v. Foster*, 711 So. 2d 675, 688

14

(La. 1998) ("[O]ur due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution."). A plaintiff who brings a substantive due process claim must: (1) "allege a deprivation of a constitutionally protected right;" and (2) demonstrate that the government action is not "rationally related to a legitimate governmental interest." *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006). Courts analyze substantive due process claims by asking "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Conroe Creosoting Co. v. Montgomery Cty.*, 249 F.3d 337, 341 (5th Cir. 2001).

Relevant here, the denial of a license to practice one's profession can be a deprivation of a liberty interest if the reasons for the denial offend due process. *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 238–39 (1957). Whether the governmental action is rationally related to a legitimate governmental interest is a question of law for the court. *Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036, 1044 (5th Cir. 1998).

We easily see a rational relationship here. Louisiana law provides the Commission with authority under the Pest Control Law to, *inter alia*, suspend or revoke any permit, license, or registration for the Commission.[8] The Commission's decision to withhold Plaintiffs' licenses and registration, as well as its alleged inaction regarding Plaintiffs' applications, serves the legitimate governmental interest of preventing conduct in violation of the law in order to

---

[8] The Commission may suspend or revoke "any permit, license, or registration for the commission of any act which is a major violation or for multiple acts which are minor or moderate violations," based on "the affirmative vote of each of the five members of the commission." La. Stat. Ann. § 3:3372(B). "Civil penalties may be assessed, probation may be imposed, and permits, licenses, and registrations may be suspended or revoked only by a ruling of the commission based on an adjudicatory hearing held in accordance with the Administrative Procedure Act and" specified procedural rights. La. Stat. Ann. § 3:3372(E).

protect the health and safety of Louisiana's citizens.  *See, e.g.*, *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198–99 (2003) (finding rational a city's decision to refuse requests for building permits to applicants until a referendum had been passed enabling its issuance as such conduct would be in violation of the law); *Green Turtle Landscaping Co. v. City of New Orleans*, No. 01–1666, 2003 WL 22272188, at \*1–4 (E.D. La. Oct. 2, 2003).

In light of *City of Cuyahoga Falls* and *Green Turtle Landscaping Co.*, we find no error in the district court's determination  that Plaintiffs' right to work "in the common occupations of his community" does not exist exclusive of regulatory rules created to protect the consumer and the environment. Michael Cripps challenges the Defendants' conduct as applied to him, arguing that the decision to impose fines, as well as filing the baseless charges themselves, bears no rational relationship to any legitimate government interest.    However, the Commission was merely imposing practical requirements as a penalty for violations of law in an attempt to protect the constituents the LDAF serves.  *FM Props. Operating Co. v. City of Austin,* 93 F.3d 167, 172–73 (5th Cir. 1996) (finding no substantive due process violation where a city disapproved a company's development project for its failure to comply with established law).  The Commission, an agency charged with administering the regulatory scheme that governs the implementation of rules and regulations in the interests, health, safety, and welfare of the Louisiana public, imposed fines and withheld licensing in order to uphold the law and its duty to the public.

Even assuming that Michael Cripps' interest in pursuing an occupation was deprived when Defendants refused to grant him temporary registration or licensure, *see Brantley v. Kuntz*, 98 F. Supp. 3d 884, 889–90 (W.D. Tex. 2015), these preliminary fines, and any potential resulting penalty for nonpayment,

were agreed upon by stipulation. Despite the numerous arguments for why the charges were levied against him, Michael Cripps has failed to show that the complained-of conduct does not relate to the government's interest in enforcing the law and ensuring the health and safety of the public. *See, e.g., Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir. 1988) (concluding that the Texas Board of Examiners' decision to license only examiners who can provide good care to clients, where the Board imposed a series of practical requirements and easily-administered rules, was rational). The Commission's actions do not fall below the Fourteenth Amendment's constitutional mandate. *See Simi Inv. Co. v. Harris Cty.*, 236 F.3d 240, 251 (5th Cir. 2000) ("If the question is at least debatable, there is no substantive due process violation." (citation and internal quotation marks omitted)).

While David Cripps contends that the Commission's failure to properly address any of his grievances is evidence of a violation of his due process rights, the Commission took no action against him on August 3, 2011, at all. The Commission's failure to respond was neither so "egregious" nor "outrageous" that it may fairly be said to shock the contemporary conscience. *See Conroe Creosoting Co.*, 249 F.3d at 341. Further, at the very least, the Commission's decision not to act on David Cripps' licensing and registration was rational. David Cripps expressly stated that he did not wish to address the Commission, his matter was not before the Commission at that time, and the Commission was not required to make a ruling as to any of his prior claims even if Michael Cripps spoke on David Cripps' behalf.

Finally, Willie Cripps bases his substantive due process claim on the Commission's August 3, 2011, resolution requiring inspection of his business records to determine if he complied with the law. The resolution states that if treatments were not in compliance with law, Willie Cripps would then need to

re-treat each property to ensure compliance.  Willie Cripps argues that such a search would be an "unlimited and unqualified" search of all of his books and records relating to properties he had treated.  It is clear here, however, that Willie Cripps fails to substantiate any claim for such a constitutional violation. The Commission's resolution requiring Willie Cripps to re-treat property was in direct response to Willie Cripps' statement that he treated properties with the incorrect amounts of pesticide.  However, at no time has Willie Cripps' interest in freely engaging in the common occupations of life been infringed upon, as no action has occurred related to his license or registration, he has not yet been required to re-treat any properties, and no search has been conducted of his home.  Even if such an infringement occurred, the legitimate governmental interest overriding such action is the Commission's goal of ensuring that his previous treatments are in compliance with the law in order to maintain the health and safety of the public.  See *FM Properties Operating Co.*, 93 F.3d at 172–73 (finding government action to have a rational relationship to the legitimate governmental purpose of protecting the public health, safety, and welfare).  However broad, such a request by the Commission was not in contravention of the Fourteenth Amendment.

In sum, although Plaintiffs may have a protected interest in being free from arbitrary state action not rationally related to a state purpose, they do not have a constitutional right to violate rules and regulations of the Louisiana Pest Control law.  The record establishes a substantial basis for Defendants' actions and precludes any inference that such actions were arbitrary.  *See Green Turtle Landscaping*, 2003 WL 22272188, at *1–4.  The district court's finding of no genuine issue of material fact was proper.

Because Louisiana courts have found the due process protections in the Louisiana Constitution to be coextensive with the protections of the

Fourteenth Amendment, the same determination applies to Plaintiffs' state law claims. *See Plaquemines Par. Gov't v. River/Rd. Constr., Inc.*, 828 So. 2d 16, 24 (La. App. 4 Cir. 2002).

### C. Eighth Amendment Excessive Fines Clause

Next, we turn to Plaintiffs' argument that the district court erred in dismissing Plaintiffs' Eighth Amendment Excessive Fines Clause claim where the Commission imposed fines and interest on Plaintiffs.    The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed . . ." U.S. Const. amend. VIII.  An administrative agency's fine does not violate the Eighth Amendment—no matter how excessive the fine may appear—if it does not exceed the limits prescribed by the statute authorizing it.  *See Newell Recycling Co. v. E.P.A.*, 231 F.3d 204, 210 (5th Cir. 2000).

Plaintiffs' Eighth Amendment argument fails.    In addressing the Commission's imposition of fines, we echo prior Supreme Court and Fifth Circuit precedent: first, the Eighth Amendment does not apply of its own force to the States, *see Hinojosa v. Livingston*, 807 F.3d 657, 665 n.5 (5th Cir. 2015), and second, "[w]e never have decided whether . . . the Eighth Amendment's prohibition of excessive fines applies to the States through the Due Process Clause," *see McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010).  *See also Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 276, n. 22 (1989) (declining to decide whether the excessive fines protection applies to the States).    Notwithstanding, Plaintiffs highlight that this court has assumed, without deciding, that the Clause is applicable. *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 74 (5th Cir. 2012) ("Even assuming that the [Excessive Fines] Clause has been incorporated against the states, the fine in

question—$10,000 for filing a fraudulent lien [under Texas law]—is not 'grossly disproportional to the gravity of a defendant's offense'").

Assuming *arguendo* that the Excessive Fines Clause applies, the record indicates that each of Plaintiffs' offenses resulted in fines that do not exceed the limits prescribed by the statute authorizing it. *See Newell Recycling Co.*, 231 F.3d at 210. In fact, the Commission imposed penalties well below the statutorily prescribed maximum—both Michael and David Cripps faced potential fines of roughly $20,000 or more, but the Commission imposed a final penalty that did not exceed even half this amount. Thus, even assuming that the Excessive Fines Clause has been incorporated against the States, the fines imposed here were neither grossly disproportional to the gravity of their offenses nor beyond that prescribed by statute.

### D. Qualified Immunity

The final issue before this court is whether the district court erred in finding Fields entitled to qualified immunity. Plaintiffs argue that the district court erred in granting the qualified immunity defense with respect to their claim that Fields' conduct violated their First and Fourteenth Amendment rights. Plaintiffs argue that Fields was personally involved in all adverse actions against them and that a reasonable jury could conclude that Fields' actions were not objectively reasonable in light of the law and the facts. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998) (reviewing claims of qualified immunity using a two-step analysis: first, asking whether a plaintiff has alleged the violation of a clearly established statutory or constitutional right and, second, determining whether a defendant's conduct was "objectively reasonable"). They offer Fields' presence at the Commission hearing and his prior interactions with Plaintiffs as evidence of his direct violation of their rights. Defendants emphasize that Fields was a government official

performing a discretionary task, Fields' conduct did not violate Plaintiffs' constitutional rights, and even assuming that Fields' conduct did violate any of Plaintiffs' rights, a reasonable official would not have known that "merely being present" at the Commission hearing is an adverse action that could give rise to personal liability.

Because Plaintiffs' failed to establish a constitutional violation, we need not reach the question of whether Fields' conduct was objectively reasonable. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996); *Dorsett v. Bd. of Trs. for State Colls. & Univs.*, 940 F.2d 121, 125 (5th Cir. 1991). Under the facts established by the summary judgment record, this claim must fail and the district court's grant of summary judgment in favor of Defendants is without error.

## V.    Conclusion

For the foregoing reasons, we AFFIRM.